UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

CORIELLE JOHNSON,

                Plaintiff,                Case No. 2:13-cv-336

v.                                              Honorable R. Allan Edgar

UNKNOWN WERTANEN, et al.,

                Defendants.
_____/

**OPINION**

        This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Wijayagunarathe, Healey, Maki, and Casper. The Court will serve the complaint against Defendant Wertanen.

**Discussion**

I.        Factual allegations

Plaintiff Corielle Johnson, a state prisoner currently confined at the Baraga Maximum Correctional Facility (AMF), filed this civil rights complaint pursuant to 42 U.S.C. § 1983 against Defendants Corrections Officer Wertanen, Assistant Resident Unit Manager Gina Healey, Hearing Officer Linda Maki, Dr.. Wijayagunarathe, and R.N. Casper. Plaintiff alleges that on April 24, 2013, he said something to Defendant Casper that was misconstrued and he was subsequently placed on suicide watch. Defendant Wertanen came to Plaintiff's cell and shook his head, stating "you again Johnson? Trying to come jack off, I'm going to love this, you fucking fucks always playing bam-bam and I am sick of you, all you wanna do is jack off on the camera, I got ya." Plaintiff responded by yelling that Defendant Wertanen was a coward and that he should get away from Plaintiff's cell.

On April 26, 2013, Defendant Wertanen called Plaintiff profane names. Plaintiff told Defendant Wertanen to get away from his cell, threatened to "bolt" Defendant Wertanen's ass, and asserted that Defendant Wertanen was retaliating against Plaintiff for "going on bam-bam." Defendant Wertanen stated "You're not eating." However, Corrections Officer Dove overrode Defendant Wertanen and Plaintiff received his breakfast meal. Defendant Wertanen then stated that he was going to shake down Plaintiff's cell and then they would see how Plaintiff's "legal shit" went. Defendant Wertanen took five of Plaintiff's books and tore the pages out of them. Defendant Wertanen also stole Plaintiff's step III grievances, which were to be sent to the MDOC Director's office. Finally, Defendant Wertanen took all of Plaintiff's lawsuits and notes, tore the pages up, and mixed everything together.

On May 7, 2013, Defendant Wertanen verbally harassed Plaintiff while he going to his psychiatric appointment.  On May 8, 2013, Defendant Wertanen called Plaintiff a name and stated, "You wanna write your grievances?  I gotcha, cause I'll be over here for a long time, think your [sic] in that corner on mistake?  Watch this."  Later, while passing out trays, Defendant Wertanen slammed Plaintiff's hand inside the food slot.  Plaintiff bit his lip and ran cold water over his hand.  Plaintiff then informed health care that he had injured his hand when he punched the wall, because he knew that staff would protect each other and was afraid that he would be refused treatment for his hand.  Plaintiff succeed in having his injury "placed on file" by Defendant Casper and filed a grievance against Defendant Wertanen.

On May 9, 2013, Defendant Casper gave Plaintiff one bag of ice, but did not bring him any more, nor did he recommend any increase in Plaintiff's pain medication.  On May 10, 2013, Defendant Wijayagunarathe noted that Plaintiff had swelling from his knuckles to his wrist, and that he could move his fingers "with force."  Defendant Wijayagunarathe further noted that Plaintiff was on liquid medications twice a week, adding that there must be some reason for this dosage and that he could not give Plaintiff any additional pain medication.  On May 15, 2013, Plaintiff kited health care regarding pain in his hand, but Plaintiff was refused call out by Corrections Officers on May 16, 2013.

On May 16, 2013, Resident Unit Manager Jondreau reviewed Plaintiff's grievance on Defendant Wertanen with him.  Plaintiff states that this occurred immediately after Defendant Healey had made legal rounds and picked up Plaintiff's mail.  Later that day, Defendant Wertanen told Plaintiff that he had a ticket coming, and they would see how Plaintiff liked "being lied on."  Michele Wealton subsequently came to Plaintiff's cell with a ticket for "attempted assault and

battery," which asserted that Plaintiff had tried to hit Defendant Healey's hand with his exposed penis when she was picking up his legal mail. Plaintiff asserts that this is completely false. Plaintiff believes that Defendants Healey and Wertanen conspired to set Plaintiff up on a false misconduct ticket in retaliation for filing a grievance on Defendant Wertanen.

On May 21, 2013, Plaintiff kited health care regarding his hand. Plaintiff was seen by Dr. Wijayagunarathe on June 1, 2013, because his hand was still swollen and sore. Dr. Wijayagunarathe did an x-ray, although Plaintiff fails to reveal the results of that x-ray.

On May 23, 2013, Plaintiff received a hearing on the assault and battery misconduct before Defendant Maki, who found Plaintiff guilty. Plaintiff complains that this finding was not based on evidence, but merely the fact that Plaintiff had complimented Defendant Maki on her sweater and that he turned to look at the other female staff. Plaintiff states that Defendant Maki refused to listen to his statement and that she mistakenly asserted that he had admitted to masturbating. Defendant Maki stated that after watching Plaintiff at the hearing, she did not doubt that he acted exactly as described by Defendant Healey.

Plaintiff states that Defendants' conduct violated his rights under the First and Eighth Amendments. Plaintiff seeks compensatory and punitive damages.

II.     Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Initially, the court notes that Defendant Maki is a hearing officer whose duties are set forth at MICH. COMP. LAWS § 791.251 through § 791.255. Hearing officers are required to be attorneys and are under the direction and supervision of a special hearing division in the Michigan

Department of Corrections. *See* MICH. COMP. LAWS § 791.251(e)(6). Their adjudicatory functions are set out in the statute, and their decisions must be in writing and must include findings of facts and, where appropriate, the sanction imposed. *See* MICH. COMP. LAWS § 791.252(k). There are provisions for rehearings, *see* MICH. COMP. LAWS § 791.254, as well as for judicial review in the Michigan courts. *See* MICH. COMP. LAWS § 791.255(2). Accordingly, the Sixth Circuit has held that Michigan hearing officers are professionals in the nature of administrative law judges. *See Shelly v. Johnson*, 849 F.2d 228, 230 (6th Cir. 1988). As such, they are entitled to absolute judicial immunity from inmates' § 1983 suits for actions taken in their capacities as hearing officers. *Id.*; *and see Barber v. Overton*, 496 F.3d 449, 452 (6th Cir. 2007); *Dixon v. Clem*, 492 F.3d 665, 674 (6th Cir. 2007); *cf. Pierson v. Ray*, 386 U.S. 547, 554-55 (1967) (judicial immunity applies to actions under § 1983 to recover for alleged deprivation of civil rights). Therefore, Plaintiff's claim against Defendant Maki is properly dismissed.

    As noted above, Plaintiff makes a conclusory claim that Defendants Healey and Wertanen conspired to have Michele Wealton falsify an assault and battery misconduct on Plaintiff. To state a claim for conspiracy, a plaintiff must plead with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987); *Smith v. Rose*, 760 F.2d 102, 106 (6th Cir. 1985); *Pukyrys v. Olson*, No. 95-1778, 1996 WL 636140, at *1 (6th Cir. Oct. 30, 1996). A plaintiff's allegations must show (1) the existence or execution of the claimed conspiracy, (2) overt acts relating to the promotion of the

conspiracy, (3) a link between the alleged conspirators, and (4) an agreement by the conspirators to commit an act depriving plaintiff of a federal right. *Lepley v. Dresser*, 681 F. Supp. 418, 422 (W.D. Mich. 1988). "[V]ague allegations of a wide-ranging conspiracy are wholly conclusory and are, therefore, insufficient to state a claim." *Hartsfield v. Mayer*, No. 95-1411, 1996 WL 43541, at *3 (6th Cir. Feb. 1, 1996). A simple allegation that defendants conspired to cover up wrongful actions is too conclusory and too speculative to state a claim of conspiracy. *Birrell v. Michigan,* No. 94-2456, 1995 WL 355662, at *2 (6th Cir. June 13, 1995).

      Plaintiff's allegations of conspiracy are conclusory and speculative. His allegations, even viewed in the light most favorable to Plaintiff, describe discrete facts that involved two individual officers. There is no indication that either Defendants Wertanen or Healey even spoke to each other prior to the issuance of the misconduct ticket. Plaintiff has provided no allegations establishing a link between the alleged conspirators or any agreement between them. Plaintiff relies entirely on a highly attenuated inference from the mere fact that he has been disciplined by or subjected to objectionable treatment by one officer after he filed a grievance on another officer. As the Supreme Court has held, such allegations, while hinting at a "possibility" of conspiracy, do not contain "enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. at 556. Instead, the Court has recognized that although parallel conduct may be consistent with an unlawful agreement, it is insufficient to state a claim where that conduct "was not only compatible with, but indeed was more likely explained by, lawful, unchoreographed . . . behavior." *Iqbal*, 556 U.S. at 680. In light of the far more likely possibility that the incidents were unrelated, Plaintiff fails to state a plausible claim of conspiracy.

Moreover, with regard to Plaintiff's claim that the assault and battery misconduct written by Defendant Healey was retaliatory, the court notes that where a plaintiff is ultimately found guilty of misconduct charges, a plaintiff cannot state a claim for retaliation arising from the misconduct charges. *Wilson v. Phipps*, No. 97-1661, 1998 WL 384560, at *1 (6th Cir. June 18, 1998) (citing *Orebaugh v. Caspari*, 910 F.2d 526, 528 (8th Cir. 1990) (per curiam)). Therefore, Defendant Healey is properly dismissed from this action.

Plaintiff claims that Defendants Wijayagunarathe and Casper violated his Eighth Amendment rights. The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004). If, however the need involves "minor maladies or non-obvious complaints of a serious need for medical care," *Blackmore*, 390 F.3d at 898, the inmate

must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105-06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995); *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the

misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). In this case, Plaintiff claims that Defendants Wijayagunarathe and Casper failed to increase his pain medication following the injury to his hand, and that Defendant Casper only brought him one bag of ice. Plaintiff further claims that he was not immediately given an x-ray, but concedes that he did eventually receive one. Also, as noted above, Plaintiff fails to specify the results of the x-ray. Where, as here, "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Perez v. Oakland County*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). Therefore, Plaintiff's Eighth Amendment claims against Defendants Wijayagunarathe and Casper are properly dismissed.

Finally, the court notes that Plaintiff's retaliation and excessive force claims against Defendant Wertanen are nonfrivolous and may not be dismissed on initial screening.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Wijayagunarathe, Healey, Maki, and Casper will be dismissed for failure

to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will serve the complaint against Defendant Wertanen.

An Order consistent with this Opinion will be entered.

Dated:     12/5/2013                      */s/ R. Allan Edgar*
                                                        R. Allan Edgar
                                                        United States District Judge